UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

CHERYL WURSTER, )
)
        Plaintiff, ) Case No. 1:12-cv-1149
)
v. ) Honorable Robert J. Jonker
)
COMMISSIONER OF )
SOCIAL SECURITY, )
) **REPORT AND RECOMMENDATION**
        Defendant. )
_____ )

        This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income (SSI) benefits. On June 29, 2009, plaintiff filed her application for benefits alleging a December 22, 2001 onset of disability. (A.R. 216-19). An earlier administrative decision barred any onset of disability date before May 27, 2009. Plaintiff amended her claim to allege a May 27, 2009 onset of disability.[1] (A.R. 30). Her claim was denied on initial review. On April 27, 2011, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 26-59). On May 12, 2011, the ALJ issued a decision finding that plaintiff was not

---

[1] Administrative *res judicata* arising from a decision dated May 26, 2009 (A.R. 65-76), barred any onset of disability date before May 27, 2009. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1232 (6th Cir. 1993). Further, SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, July 2009 is plaintiff's earliest possible entitlement to SSI benefits.

disabled. (A.R. 13-20). On August 30, 2012, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claim for SSI benefits. She asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ violated SSR 96-8p in not considering the effect of the claimant's obesity, urinary frequency and incontinence, COPD, and depression on her ability to work;

2. The ALJ violated 20 C.F.R. § 416.927 when he failed to give adequate weight to the opinion of plaintiff's treating physician and failed to consider the factors set forth in section 416.927(c);[2] and

3. The ALJ's factual finding regarding plaintiff's credibility is not supported by substantial evidence.

(Statement of Errors, Plf. Brief at 9, docket # 16). I recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v.*

---

[2]Effective March 26, 2012, the factors that had been listed in subsection (d) of 20 C.F.R § 416.927 were "moved to" subsection (c). *See Gentry v. Commissioner*, 741 F.3d 708, 723 (6th Cir. 2014). For purposes of clarity, the current regulation, 20 C.F.R. § 416.927(c), is cited herein.

*Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff had not engaged in substantial gainful activity on or after June 29, 2009, the date she filed her application for SSI benefits. (A.R. 15). Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis, and obesity. (A.R. 15). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 16). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. In an eight-hour workday, the claimant can stand or walk up to two hours, sit at least six hours, and requires a sit/stand option that enables her to change positions every 30 to 45 minutes. She is limited to never climbing ladders, ropes or scaffolds; can only occasionally balance, stoop, kneel, crouch, crawl, squat or climb ramps or stairs; and cannot perform any repetitive bending, twisting, or turning at the waist. She must avoid concentrated exposure to dangerous or unprotected machinery or work at unprotected heights; and can never use air, power, torque, pneumatic or vibratory tools.

(A.R. 16). The ALJ found that plaintiff's testimony regarding her subjective functional limitations was not fully credible. (A.R. 16-18). Plaintiff was unable to perform any past relevant work. (A.R. 19). Plaintiff was 45-years-old on the date she filed her application for SSI benefits and 47-years-old as of the date of the ALJ's decision. Thus, plaintiff was classified as a younger individual at all time relevant to her application for SSI benefits. (A.R. 19). Plaintiff has at least a high-school education and is able to communicate in English. (A.R. 19). The transferability of work skills was not an issue because all plaintiff's past work experience was unskilled. (A.R. 19). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were

approximately 15,200 jobs in Michigan's Lower Peninsula that the hypothetical person would be capable of performing. (A.R. 53-54). The ALJ found that this constituted a significant number of jobs. Using Rule 202.20 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 19-20).

**1.**

Plaintiff argues that the ALJ violated SSR 96-8p in not considering the effect of her obesity, urinary frequency and incontinence, COPD, and depression on her ability to work. (Plf. Brief at 12-15; Reply Brief at 4-5). She argues that the ALJ should have found that these were additional severe impairments. The finding of a severe impairment at step 2 of the sequential analysis[3] is a threshold determination. The finding of a single severe impairment is enough and requires continuation of the sequential analysis. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). The ALJ found at step 2 of the sequential analysis that plaintiff had three severe impairments. (A.R. 15). The ALJ's failure to find additional severe impairments

---

[3]"Administrative law judges employ a five-step sequential inquiry to determine whether an adult claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

at step 2 is "legally irrelevant." *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2009); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).

Plaintiff cites SSR 96-8p for the unremarkable proposition that an ALJ must consider both severe and non-severe impairments in making his factual finding regarding a claimant's RFC.[4] The ALJ considered all plaintiff's severe and non-severe impairments when he found that plaintiff retained the RFC for a limited range of light work. (A.R. 14) (citing SSR 96-8p and 20 C.F.R. §§ 416.920(e), .945) (*see also* A.R. 16-18).

Plaintiff quotes a fragment of the ALJ's discussion of SSR 02-1p, then argues that the ALJ's factual finding regarding her RFC did not adequately take her obesity into account, that the ALJ failed to conduct the "analysis required" under SSR 02-1p, and that the ALJ failed to include obesity in the hypothetical question he posed to the VE. (Plf. Brief at 12-15). To the contrary, the ALJ's analysis of plaintiff's claim for SSI benefits *began* with consideration of her obesity and SSR 02-01p: "I have given consideration to SSR 02-01p,[5] which instructs adjudicators to consider the effects of obesity not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." (A.R. 15). The ALJ expressly considered the impact of plaintiff's obesity, including its impact on her RFC. (A.R. 15, 18). Plaintiff's argument that the ALJ did not conduct the analysis required by SSR 02-1p is meritless. The Sixth Circuit has repeatedly held that SSR 02-01p does not establish any particular procedural mode of analysis for addressing the claims of obese disability claimants.

---

[4]"Residual functional capacity is the most plaintiff can do, not the least . . . ." *Branon v. Commissioner*, 539 F. App'x 675, 677 n.3 (6th Cir. 2013); 20 C.F.R. § 416.945(a).

[5]*Titles II & XVI: Evaluation of Obesity*, SSR 02-1p (reprinted at 2002 WL 34686281) (SSA Sept. 12, 2002)).

-6-

*See Coldiron v. Commissioner*, 391 F. App'x 435, 442-43 (6th Cir. 2010) (It is "a mischaracterization to suggest that Social Security Ruling 02-1p offers any particular mode of analysis for obese disability claimants.") (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006)); *Nejat v. Commissioner*, 359 F. App'x 574, 577 (6th Cir. 2009).

The Sixth Circuit has also rejected arguments by social security claimants asserting that a hypothetical question was deficient because it did not include a particular medical condition. A hypothetical question is not required to list the claimant's medical conditions but is only required to reflect the claimant's limitations. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ found that plaintiff's testimony was not fully credible. It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Lee v. Commissioner*, 529 F. App'x 706, 715 (6th Cir. 2013) ("An ALJ is only required to incorporate into a hypothetical question those limitations he finds credible."); *Carrelli v. Commissioner*, 390 F. App'x 429, 438 (6th Cir. 2010) ("[I]t is [] 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.' ") (quoting *Casey*, 987 F.2d at 1235). The hypothetical question the ALJ posed to the VE was accurate and the VE's testimony in response provided substantial evidence supporting the ALJ's decision.

**2.**

Plaintiff argues that the ALJ's factual finding regarding her credibility is not supported by substantial evidence. (Plf. Brief at 17-20; Reply Brief at 3). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does

not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that Social Security Ruling 96-7p requires that the ALJ explain his credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

The ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of her impairments was not fully credible. (A.R. 17-18). It was appropriate for the

ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Her credibility was further undermined by the absence of significant atrophy or neurological deficits. *See Crouch v. Secretary of Health & Human Servs.*, 909 F.2d 852, 856-57 (6th Cir. 1990) (the absence of atrophy and significant neurological deficits supports the Commissioner's conclusion that the claimant's allegation of severe and disabling pain was not credible); *see also Gaskin v. Commissioner*, 280 F. App'x 472, 477 (6th Cir. 2008). It was appropriate for the ALJ to draw an adverse inference from plaintiff's failure to follow medical advice regarding weight loss and smoking cessation. Social security regulations make pellucid that the claimant bears the burden of demonstrating good reasons for her failure to follow prescribed treatment: "If you do not follow the prescribed treatment without good reason, we will not find you disabled." 20 C.F.R. § 416.930(b). The Sixth Circuit recognizes that a claimant's failure to follow prescribed treatment is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully credible. *See Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d at 534. The ALJ's factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

**3.**

Plaintiff argues that the ALJ violated 20 C.F.R. § 416.927 when he failed to give adequate weight to the opinions that her treating physician, Timothy Hoffman, M.D., expressed in a RFC questionnaire dated March 23, 2011, and failed to consider the factors set forth in 416.927(c).

(Plf. Brief at 15-17; Reply Brief at 1-2). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[6] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment, because these are all administrative issues reserved to the Commissioner. 20 C.F.R. §§ 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

    Generally, the medical opinions of treating physicians are given substantial, if not controlling, deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917,

---

[6]"We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. § 416.927(d)(3). "[T]he Commissioner has final responsibility for deciding an individual's RFC, and to require the ALJ to base [his] RFC finding on a physician's opinion, would in effect, confer upon the treating source the authority to make a determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Rudd v. Commissioner*, 531 F. App'x 719, 728 (6th Cir. 2013).

921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 461.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).

"[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

Administrative *res judicata* stemming from the final administrative decision dated May 26, 2009, barred any onset of disability before May 27, 2009. In the earlier decision, an ALJ found that plaintiff retained the RFC to perform a limited range of light work. (A.R. 68). Under the rule of *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997), and its progeny, the ALJ was required to "adopt and be bound by the finding of the claimant's residual functional capacity or other findings required at a step of the sequential evaluation process." *Caudill v. Commissioner*, 424 F. App'x 510, 514 (6th Cir. 2011); *see Schmiedebusch v. Commissioner*, 536 F. App'x 637, 646 (6th Cir. 2013). The ALJ could not "redetermine the findings of a claimant's residual functional capacity or other issues previously determined in the absence of new and additional material evidence or changed circumstances." *Caudill*, 424 F. App'x at 514. The ALJ considered all the evidence regarding medical care that plaintiff had received after the administrative decision entered May 26, 2009. (A.R. 17-18). The ALJ made an adjustment in plaintiff's RFC because "pertinent medical findings, including subsequent medical treatment support[ed] a slightly more restrictive residual functional capacity assessment than the one found in the previous May 2009 decision[.]" (A.R. 17). He found that plaintiff retained the RFC for light work, but added additional restrictions, such as a sit stand option, which had not appeared in the 2009 decision denying plaintiff's claim for SSI benefits. (A.R. 16, 68).

On August 8, 2009, plaintiff underwent a consultative examination by Michael Kuhn, D.O. (A.R. 512-15). Plaintiff complained of a right leg injury from a car accident eight years earlier,

a left foot injury stemming from a car accident fifteen years earlier, arthritis, pain, and bladder problems which had been addressed in a 2004 surgery, with a recent worsening of bladder symptoms. (A.R. 512). Plaintiff reported that she smoked cigarettes at a pack-per-day rate for twenty years. She related that she "completed the 12th grade, can read and write, and was formerly employed as a factory worker." (A.R. 513). Plaintiff was 67 inches tall and weighed 265 pounds. The results of Dr. Kuhn's examination were "grossly unremarkable." (A.R. 515). Straight leg testing was "negative bilaterally." Plaintiff walked with a "mild" left limp, and two small bones in her hands were tender to palpation. She had no gross effusion of any joint. (A.R. 513-14). She had "full grip strength and full digital dexterity." Plaintiff had a slightly decreased pinprick sensation in the region of the post-surgical scar on her right calf and a decreased range of motion in her left ankle. Her motor strength was normal. (A.R. 514).

Plaintiff visited Dr. Hoffman on a total of three occasions: twice in the month immediately after an ALJ denied plaintiff's earlier claim for SSI benefits, and once in the month before her administrative hearing on this claim for SSI benefits.[7] (A.R. 545-47, 552). On June 3, 2010, plaintiff complained of pain in her left ear and swollen hands and elbows. (A.R. 552). Plaintiff stated that she was "not working due to pain issues." (A.R. 552). Plaintiff had "[n]o shortness of breath, cough, hemoptysis or wheezing." Her heart had "[r]egular rate and rhythm."

---

[7]If the ALJ had found that Dr. Hoffman was not a treating physician because his contact with plaintiff was limited to the three visits, that finding would have been supported by substantial evidence. *See Kornecky v. Commissioner*, 167 F. App'x 496, 506-07 (6th Cir. 2006) ("[T]wo or three visits often will not suffice for an ongoing treatment relationship.").

(A.R. 552). She weighed 278 pounds. Dr. Hoffman counseled her regarding diet and weight control. (A.R. 552).

In June and July 2010, plaintiff saw Michael Sterrett, M.D., an ear, nose and throat specialist. On July 8, 2010, Dr. Sterrett noted that plaintiff's CT can in 2010 showed "marked improvement in the maxillary sinus as compared to 2008." (A.R. 528; *see* A.R. 530).

On June 18, 2010, plaintiff returned to Dr. Hoffman. Progress notes reveal that her chief complaints were "swelling in hands and joints, test results and some paperwork that need[ed] to be signed." (A.R. 547). Plaintiff reported that her "joints hurt a lot." (A.R. 547). Dr. Hoffman noted that plaintiff had a "work up for ra [(rheumatoid arthritis)], [and there were] no documented joint changes per x-ray." (A.R. 547). Hoffman's general observations were that plaintiff had "[n]ormal activity and energy level, no change in appetite. No major weight gain or loss. No fatigue, general feeling of being ill, malaise, chills, fever, or diaphoresis." (A.R. 547). Plaintiff weighed 280 pounds; Dr. Hoffman noted her "morbidly obese body habitus." The physical examination revealed that plaintiff had bilateral "mild swelling of hands" and "no gross abnormalities." Dr. Hoffman counseled plaintiff regarding smoking cessation and foods with anti-inflammatory properties. (A.R. 547).

Nine months later, on March 3, 2011, plaintiff returned to Dr. Hoffman for a "med check and medical update for social security." (A.R. 545). Plaintiff continued to smoke, and rather than losing weight, she had gained an additional six pounds. She had no shortness of breath. She had "[n]o chest pain, pressure, discomfort, palpations, tachyarrhythmias, orthopnea, dyspnea, cyanosis, coldness of extremities, or edema." (A.R. 545). Plaintiff was not in any acute distress. Her gait was intact and her station and posture were normal. (A.R. 545). She had "[a]ppropriate

judgment and insight." She was oriented in all three spheres and had normal recent and remote memory. Her mood and affect were appropriate. Plaintiff indicated that she liked to read, so Dr. Hoffman recommended that she pick up the book "Food Rules" at the library. He indicated that plaintiff should address her multiple arthralgias by losing 100 pounds over a period of two years, beginning with an exercise regimen of daily walking. (A.R. 545).

On March 23, 2011, Dr. Hoffman signed a RFC questionnaire. (A.R. 569). Hoffman elected not to answer the question regarding the "[n]ature, frequency and length of [his] contact" with plaintiff. (A.R. 566). He stated that the proffered limitations had been in effect "since 2001." (A.R. 596). The ALJ carefully considered Dr. Hoffman's opinions and determined that the extreme limitations that he suggested were entitled to little weight, because they were not well supported by objective evidence, were not consistent with the medical evidence of record, and were not consistent with Hoffman's treatment records:

> Since June 2009, the claimant's symptoms have been primarily managed by her primary care physician, Timothy D. Hoffman, M.D. A comprehensive review of his treatment notes indicates that the claimant has sought treatment for complaints of urinary frequency, back pain, and swelling in her hands and joints. The claimant, an obese individual, was frequently advised to discontinue smoking and was educated on foods that contain anti-inflammatory properties. Laboratory work was reportedly normal, and while she occasionally presented with bilateral hand swelling and tenderness, the remainder of her clinical presentations were often unremarkable. In that regard, the claimant exhibited a full range of motion, and normal stability, strength and tone (Exhibits 16F; 22F).
>
> During her most recent appointment on March 3, 2011, the claimant continued to complain of swollen joints and indicated that her hands and arms hurt. She was reportedly still smoking and was noted to have a morbidly obese body habitus. Nevertheless, her gait was intact and her station and posture [were] normal. The claimant was advised to lose 100 pounds over a period of two years through a combination of diet and exercise (Exhibit 22F).
>
> I have considered the March 23, 2011 Medical Source Statement completed by Dr. Hoffmann. While the opinions of treating sources are entitled to special significance under SSR 96-2p, controlling weight is not warranted if such opinions are not supported by the

record. Here, the work-preclusive limitations found by Dr. Hoffmann (need for frequent unscheduled breaks, ability to stay on task impaired 75% of the time due to pain and other symptoms, handling/fingering restricted to 25-50% of the work day) are not supported by his own treatment records, nor are they consistent with the medical evidence of record. Accordingly, his opinion is not entitled to controlling weight.

(A.R. 17-18). Dr. Hoffman's opinions on issues reserved to the Commissioner were not entitled to any special significance. 20 C.F.R. § 416.927(c)(3). In addition, the ALJ considered the relevant factors listed in 20 C.F.R. § 416.927(c). Dr. Hoffman had a very brief treatment relationship with plaintiff beginning shortly after her earlier claim for SSI benefits had been denied. (A.R. 17). The treatment consisted of "manag[ing]" the symptoms that plaintiff reported. (A.R. 17). Dr. Hoffman's RFC limitations were not well supported by objective evidence. Plaintiff's test results were normal. Her clinical presentations were generally "unremarkable." (A.R. 17). Plaintiff testified that Dr. Hoffman was her new primary care physician. (A.R. 36). He is a family practitioner, and nothing in his progress notes or questionnaire responses suggested that he was a specialist offering a medical opinion related to his area of specialized expertise. The ALJ found that the extreme restrictions Dr. Hoffman suggested were inconsistent with the findings in his own progress notes and were inconsistent with the record as a whole. (A.R. 18). I find no violation of the treating physician rule.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated: March 6, 2014         /s/ Joseph G. Scoville
                             United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).